**Steve ADAMS, Jr., Petitioner,**

v.

**David SMITH, Respondent.**

No. 02–CV–73954–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 28, 2003.

Steven Adams, Ryan Correctional Facility, Detroit, MI, pro se.

Brenda E. Turner, Debra M. Gagliardi, Michigan Department of Attorney General, Lansing, MI, for Respondent.

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

TARNOW, District Judge.

Petitioner Steve Adams, Jr., has filed an application for the writ of habeas corpus. Petitioner attacks his state court convictions for criminal sexual conduct (CSC). Respondent urges the Court through counsel to deny the habeas petition. For the reasons that follow, the Court has concluded that the habeas petition must be denied.

### I. *Background*

On July 22, 1998, a circuit court jury in Wayne County, Michigan found Petitioner guilty of two counts of first-degree CSC, MICH. COMP. LAWS § 750.520b(1)(h)(i) (sexual penetration of a mentally impaired relative), and one count of second-degree CSC, MICH. COMP. LAWS § 750.520c(1)(h)(i) (sexual contact with a mentally impaired relative). The convictions arose from charges that, between September 1, 1995, and November 30, 1995, Petitioner sexually pen-

etrated his mentally impaired niece, who was fifteen years old at the time. The crimes allegedly occurred when Petitioner and the victim spent a night at the home of another relative.

The trial court sentenced Petitioner to concurrent terms of thirty to fifty years for the first-degree CSC convictions and ten to fifteen years for the second-degree CSC conviction. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished *per curiam* opinion. *See People v. Adams,* No. 214698, 2001 WL 777135 (Mich.Ct.App. Jan.16, 2001). On November 30, 2001, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Adams,* 465 Mich. 912, 636 N.W.2d 525 (2001).

Petitioner's habeas petition was received in this Court on October 1, 2002. The Petition presents the following grounds for relief:

I. The trial court erred in excluding evidence that the victim had made unfounded allegations of sexual abuse in the past.

II. The evidence presented was insufficient as a matter of law to prove that the victim was mentally incapable as required by the relevant statutes.

III. The trial court erred in failing to *sua sponte* determine whether the victim was competent to testify.

IV. The admission of other acts evidence at trial was improper.

V. The sentences were disproportionate.

VI. The trial court failed to give requested instructions.

Petitioner's habeas brief raises the following additional arguments [1]:

---

**1.** Petitioner did not file a brief in support of his first five claims. The Court has relied on

Petitioner's state appellate court brief for a better understanding of those claims.

VII. The trial court abused its discretion and infringed on Defendant's federal and state due-process rights to a fair trial and to the presumption of innocence when the court forced Defendant to wear grossly ill-fitting clothing, including pants he could not fasten, which prevented him from standing as a mark of respect when the jury entered.

VIII. The trial court erred in refusing to give requested instructions on the lesser-included offense of fourth-degree criminal sexual conduct, where the proofs amply supported the instructions.

IX. When Defendant stated on the record that he did not have the right to testify, the trial court plainly erred in failing to ascertain that Defendant made a constitutionally valid waiver of his right to testify.

X. The trial court abused its discretion and denied due process when it allowed in highly prejudicial other-acts evidence that Defendant allegedly committed criminal sexual conduct against complainant and against another witness in 1987.

XI. When Defendant sought substitution of counsel, the trial court erred in failing to conduct a reasonable inquiry into the nature and extent of the conflict between Defendant and his counsel.

XII. Ineffective assistance of counsel denied Defendant a fair trial.

 A. Trial counsel failed to object to highly prejudicial hearsay statements improperly used to bolster complainant's testimony.

 B. Trial counsel failed to impeach witness Krystal Adams with her contradictory statement to the police and with documentary evidence of her foster care placement which proved she could not have been present to witness the alleged events in November 1995.

 C. Trial counsel failed to present documentary evidence that Defendant did not live in Melvindale from September to November 1995, when the crimes were alleged to have occurred.

 D. Trial counsel failed to call important defense witnesses to prove that complainant had admitted she dreamed the incident and to attest to Defendant's character.

 E. Trial counsel failed to object to erroneous other-acts instructions.

XIII. During voir dire, the trial court instructed the jurors that their verdict "should not be a matter of conscience." The court also gave a standard reasonable-doubt instruction, omitting the concepts that a juror should find guilt to a moral certainty, and that a reasonable doubt exists when the evidence would make a juror hesitate to act in his own important matters. The instructions infringed on the due-process standard of proof beyond a reasonable doubt and constituted structural error requiring reversal.

XIV. Because the testimony did not show that the CSC–I convictions on counts I and II arose out of two separate and distinct sexual penetrations, Defendant's federal and state double-jeopardy rights were violated and his Count–II conviction and sentence must be vacated.

XV. Cumulative error requires reversal.

Respondent argues in an answer to the habeas petition that Petitioner's claims are not cognizable, lack merit, and/or are procedurally defaulted.

## II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

 A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495.

## III. Discussion

### A. Excluding Evidence

Petitioner's first claim alleges that the trial court erred in excluding evidence that the victim made unfounded allegations of sexual abuse in the past. Petitioner alleges that his right to confront his accuser was violated by the trial court's refusal to admit the evidence.

 The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. VI. "At the core of the Confrontation Clause is the right of every defendant to test the credibility of witnesses through cross-examination." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir.2000) (citing *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). The Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in original). "When faced with alleged prior false accusations of rape, federal courts have adhered to the fine line drawn in *Davis* and [*Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ], finding cross-examination constitutionally compelled when it reveals witness bias or prejudice, but not when it is aimed solely to diminish a witness's general credibility." *Boggs*, 226 F.3d at 737.

Defense counsel sought permission before trial to elicit testimony regarding the victim's allegedly false accusations against other people. He informed the trial court that he thought the victim had made false accusations against her father and stepfather. The trial court denied the request to admit the evidence. (Tr. July 20, 1998, at 9–11). The Michigan Court of Appeals subsequently concluded that the trial court did not abuse its discretion in ruling that the evidence was inadmissible, because defense counsel did not make an offer of proof concerning specific allegations that were false.

▪ Defense counsel apparently wanted to use information he possessed concerning recanted accusations to make a general attack on the victim's credibility. He did not allege that the victim was biased or prejudiced against Petitioner or that she had an ulterior motive in testifying against Petitioner. The defense theory was that the alleged assault on the victim was something that the victim dreamed, as opposed to something that actually occurred.

No matter how central an accuser's credibility is to a case … the Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct.

*Boggs*, 226 F.3d at 740 (emphasis in original). Therefore, the state court's refusal to admit the disputed evidence did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law interpreting the Confrontation Clause.

### B. *Sufficiency of the Evidence*

Petitioner's second claim alleges that there was insufficient evidence produced at trial to prove that the victim was mentally incapable as required by the statutes under which he was charged and convicted. The Michigan Court of Appeals concluded that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the victim was mentally incapable.

▪ Petitioner's claim requires the Court to ask

whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (internal citation and footnote omitted) (emphasis in original).

▪ The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir.), *cert. denied*, 537 U.S. 1004, 123 S.Ct. 515, 154 L.Ed.2d 401 (2002). In addition, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir.2003).

▪ The prosecutor was required to establish that the victim was "mentally incapable," "mentally disabled," or "mentally incapacitated." Mich. Comp. Laws § 750.520b(1)(h); Mich. Comp. Laws § 750.520c(1)(h). Petitioner has focused on the phrase "mentally incapable," which the Michigan legislature has defined as "suffer[ing] from a mental disease or de-

fect which renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." MICH. COMP. LAWS § 750.520a(g). Petitioner argues that the victim was capable of appreciating the physical act and its moral implications and capable of consenting to sex.

The prosecutor was not required to establish that the victim was "mentally incapable," "mentally disabled" *and* "mentally incapacitated." It was sufficient to show that the victim fit the description of one of those conditions. *See* MICH. COMP. LAWS § 750.520b(1)(h); MICH. COMP. LAWS § 750.520c(1)(h). The legislature has said that "mentally disabled" "means a person has a mental illness, is mentally retarded, or has a developmental disability." MICH. COMP. LAWS § 750.520a(f).

The victim's mother testified that the victim was mentally disabled. (Tr. July 21, 1998, at 44). School psychologist Gary Golbesky testified that the victim had an intelligence quotient of 53 to 54 and that she was trainable to educable, i.e., mentally impaired. Although the victim was a teenager when Golbesky last tested her before trial, her test scores were that of an eight-year-old child, and her memory was comparable to that of a seven-year-old child. Golbesky opined that the victim would have trouble making analytical assessments in some situations. (Tr. July 20, 1998, at 116–18, 122).

A rational trier of fact could have concluded from the evidence presented at trial that the victim was mentally retarded and, therefore, "mentally disabled" as defined by statute. Thus, state appellate court's conclusion that the evidence was sufficient to support the convictions was objectively reasonable. The state court's denial of relief did not result in a decision that was contrary to, or an unreasonable application of *Jackson*, and Petitioner has no right to habeas relief on the basis of his second claim.

### C. *The Victim's Competence*

■ The third habeas claim alleges that the trial court erred in failing to determine *sua sponte* whether the victim was competent to testify. Petitioner argues that, because the victim had the mind of a seven-year-old child, the trial court was required to determine her competence pursuant to Michigan Rule of Evidence 601.

Petitioner has not pointed to any Supreme Court case that requires courts to question witnesses, other than the defendant, to determine competence. The trial court's alleged violation of Michigan Rule of Evidence 601 is not a basis for granting the writ of habeas corpus. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (stating that "[a] federal court may not issue the writ on the basis of a perceived error of state law"); *see also People v. Breck*, 230 Mich.App. 450, 457, 584 N.W.2d 602, 606 (1998) (stating that "determination of the competency of a witness is a matter within the discretion of the trial court" and Michigan Rule of Evidence "601 states the general rule of competency of witnesses"). Furthermore, as the Michigan Court of Appeals recognized, the record indicates that the victim was competent to testify.[2] Accordingly, Peti-

---

2. In the words of the court of appeals,

[a]t the preliminary examination, the victim was questioned with regard to her ability to distinguish between the truth and a lie and the importance of testifying truthfully. Both parties and the court were satisfied that the victim was competent to testify. At trial, Golbesky, the victim's school psychol-

ogist, testified that the victim was able to distinguish the difference between an honest and dishonest answer and between something that actually happened to her and something she had merely heard. The victim's testimony was coherent and was also corroborated by another witness. *Adams*, at *3.

tioner's third claim does not entitle him to habeas relief.

### D. Other Acts Evidence

■ The fourth and tenth habeas claims allege that the admission of other acts evidence at trial was improper. Petitioner alleges that he was prejudiced by his daughter Krystal Adams' testimony that he stalked Krystal's mother. Krystal's comment, however, was an unsolicited remark, which the trial court instructed the jury to ignore. (Tr. July 21, 1998, at 12–13).

Petitioner also alleges that he was prejudiced by his daughter's testimony that he molested her and by the complainant's testimony that he assaulted her on other occasions. The Michigan Court of Appeals determined that the trial court did not abuse its discretion in admitting the evidence. The court of appeals stated that the prosecutor articulated a proper purpose for admitting the evidence and that the evidence was relevant. The court of appeals also stated that, in light of the trial court's instruction to the jury on how to consider the evidence, the danger of unfair prejudice to Petitioner did not substantially outweigh the probative value of the evidence.

■ Even if the trial court erred in applying the Michigan Rules of Evidence, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir.1994). Although Petitioner alleges that the trial court's error violated his right to due process, the Supreme Court has declined to hold that "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice or the due process test of fundamental fairness. *See Dowling v. United States*, 493 U.S. 342, 352–53, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003).[3] Accordingly, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1), *id.* at 513, and Petitioner's claim has no merit.

### E. The Sentence

■ Petitioner's fifth claim alleges that his sentences were disproportionate despite the fact that they fell within the

---

**3.** As further explained in *Bugh:*

In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75[, 112 S.Ct. 475, 116 L.Ed.2d 385] (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5[, 112 S.Ct. 475]. Moreover, in *Spencer v. Texas*, 385 U.S. 554[, 87 S.Ct. 648, 17 L.Ed.2d 606] (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were giv-

en and a valid state purpose is served. *Id.* at 563–64[, 87 S.Ct. 648]. The Court recognized that it was not 'a rulemaking organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority.' *Id.* at 564[, 87 S.Ct. 648]. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172[, 117 S.Ct. 644, 136 L.Ed.2d 574] (1997); *Huddleston v. United States*, 485 U.S. 681[, 108 S.Ct. 1496, 99 L.Ed.2d 771] (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh*, 329 F.3d at 512–13.

sentencing guidelines. Petitioner bases his argument on *People v. Milbourn,* 435 Mich. 630, 461 N.W.2d 1 (1990).[4]

The Eighth Amendment does not require strict proportionality between the crime and sentence, *Harmelin v. Michigan,* 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), and the alleged violation of state law as announced in *Milbourn* is not a cognizable claim on habeas review. *Atkins v. Overton,* 843 F.Supp. 258, 260 (E.D.Mich.1994). Therefore, the state appellate court's conclusion that Petitioner's sentences were proportionate under *Milbourn* did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### F. *Failure to Give the Requested Instructions*

 Petitioner's sixth and eighth claims allege that the trial court failed to give requested jury instructions on the lesser-included offense of fourth-degree CSC. Petitioner says that he was entitled to have the jury consider fourth-degree CSC as a lesser-included offense of first-degree CSC and second-degree CSC. The Michigan Court of Appeals determined that the trial court properly refused to instruct on fourth-degree CSC in connection with the charge of first-degree CSC. The court of appeals determined that the trial court erred in refusing to give the requested instruction in connection with the charge of second-degree CSC. Howev-

er, the court of appeals found the error to be harmless.

The Supreme Court has declined to decide whether due process requires the giving of jury instructions on lesser-included offenses in non-capital cases. *See Beck v. Alabama,* 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).[5] The Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F.3d 531, 541 (6th Cir.2001) (citing *Bagby v. Sowders,* 894 F.2d 792, 795–97 (6th Cir. 1990) (*en banc*)), *cert. denied,* 535 U.S. 975, 122 S.Ct. 1448, 152 L.Ed.2d 390 (2002). Accordingly, Petitioner's challenge to the trial court's refusal to instruct on fourth-degree CSC is not cognizable on habeas review.

### G. *Petitioner's Appearance at Trial*

 Petitioner's seventh claim alleges that his rights to due process, a fair trial, and the presumption of innocence were violated when the trial court forced him to wear grossly ill-fitting clothing. Petitioner contends that, due to the weight he put on in jail, he could not fasten his pants or jacket on the first day of trial. He says that his family acquired other clothes for him within an hour, but the trial court would not permit him to change clothes until the following day. He claims that, on the second day of trial, he was forced to wear prison slippers. He maintains that

---

**4.** The Michigan Supreme Court held in *Milbourn* that a sentence constitutes an abuse of discretion if it "violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn,* 435 Mich. at 636, 461 N.W.2d at 2–3.

**5.** The Supreme Court held in *Beck* that the death penalty may not be imposed for a capi-

tal offense if the jury was not permitted to consider a verdict on a lesser-included non-capital offense, which would have been supported by the evidence. *Id.* at 627, 100 S.Ct. 2382. More recently, the Supreme Court has held that state courts are not required under the Constitution to instruct juries in capital offense cases on crimes that are not lesser included-offenses of the charged crime. *See Hopkins v. Reeves,* 524 U.S. 88, 90–91, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998).

his clothing was prejudicial, because: (1) it portrayed him as being contemptuous of the legal process, mentally deranged, a bum, or an object of ridicule and scorn; (2) he could not stand and show respect to the jurors when they entered the courtroom; (3) the poor fit suggested that the clothing was hastily procured for an inmate *in lieu* of a prison uniform; and (4) he was charged with CSC. The Michigan Court of Appeals determined that Petitioner's claim was unsupported by the record and that the trial court did not abuse its discretion in proceeding with the trial.[6]

The Supreme Court has held that compelling a defendant to stand trial in identifiable prison clothes is inconsistent with the presumption of innocence accorded criminal defendants and the concept of equal justice embodied in the Fourteenth Amendment. *See Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Petitioner has pointed to no Supreme Court case that prohibits an accused from appearing at trial in improperly fitted civilian clothes.

The trial court stated that the ill-fitting clothing was "not that obvious" and although Petitioner's pants obviously did not close all the way, "it's not like he's sitting there with his pants wide open before the jury or something like that." (Tr. July 20, 1998, at 3, 91). In addition, the trial court instructed everyone to remain seated when the jury entered the courtroom. (*Id.*). Petitioner's lawyer stated after the trial

that he did not believe this incident played a major role in the trial.

This Court concludes that Petitioner's clothing on the first day of trial did not erode the presumption of innocence. Accordingly, the state court's conclusion did not result in a decision that was an unreasonable application of the facts, contrary to Supreme Court precedent, or an unreasonable application of Supreme Court precedent.

### H. *Waiver of the Right to Testify*

Petitioner alleges next that the trial court erred in failing to ascertain whether he made a constitutionally valid waiver of his right to testify. Petitioner says that he did not waive the right and that a court officer threatened him with harm if he testified.

■■■■ Defendants in criminal cases possess a constitutional right to testify in their own defense. *Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Nevertheless,

> [b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.

**6.** More specifically, the court of appeals stated that,

> Defendant's claims are unsupported by the record and, in fact, some of his contentions are explicitly contradicted by the record. The trial court apparently was unaware, until the end of the first day of trial, that Defendant's family had brought him clothing. Accordingly, Defendant's contention that the trial court refused to allow him to change during the first day of trial is without merit. Likewise, the trial court

> instructed the prosecutor not to stand when the jury entered the courtroom, and the record is devoid of any indication that the prosecutor ignored the court's directive. There is also nothing in the record to indicate that Defendant was forced to wear prison shower slippers on the second day of trial. Regardless, because this latter allegation was not preserved by an objection, any claim of error is forfeited. *People v. Reginald Harris,* 80 Mich.App. 228, 230–231, 263 N.W.2d 40 (1977).

*United States v. Webber*, 208 F.3d 545, 551 (6th Cir.2000). " '[W]hen a tactical decision is made not to have the defendant testify, the defendant's assent is presumed,' . . . barring any indication by Petitioner at trial that he disagreed with his counsel." *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir.2000) (quoting *Webber*, 208 F.3d at 551). However, the better practice is to have an on the record waiver.

 Petitioner did not ask to testify. He did say that he had no choice. He also denied possessing the right to testify, and he intimated that his attorney was forcing him to waive the right. However, the trial court informed Petitioner that he had a right to testify, that the decision was his to make, and that the court did not want Petitioner to feel as though someone was forcing him to do something. Petitioner then told the trial court that he did not want to testify. (Tr. July 21, 1998, at 151–54).

Defense counsel stated in a post-trial letter to the Attorney Grievance Commission that he advised Petitioner not to take the stand and that Petitioner agreed. Defense counsel had anticipated that the prosecutor would have discredit Petitioner, show that he did not remember things he had done, and manage to have Petitioner assert that everyone in the courtroom, except himself, was a liar. In addition, Petitioner had prior convictions for assault with intent to do great bodily harm less than murder, breaking and entering an occupied building, and aggravated stalking. Defense counsel described Petitioner's allegation that he was threatened by a guard as an "outright fabrication." Counsel said that, although Petitioner did have a confrontation with a guard, the incident had absolutely nothing to do with why Petitioner did not testify.

In summary, the trial court did inquire into whether Petitioner was knowingly and voluntarily waiving his right to testify and

Petitioner responded that he not want to testify. This Court concludes that the state appellate court's finding of no error was not contrary to, or an unreasonable application of, any Supreme Court decision.

**I. *Inquiry into the Conflict with Counsel***

Petitioner asked for a different attorney mid-way through the trial. He asserts that the trial court erred in failing to conduct a reasonable inquiry into the nature and extent of the conflict between him and his attorney.

 The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. VI.

It is hornbook law that "[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel." LaFave and Israel, Criminal Procedure, § 11.4 at 36 (1984) (footnote omitted). The right to counsel of choice, unlike the right to counsel, however, is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.

*United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir.1990) (footnote and citations omitted).

 "Where the court's inquiry is thwarted by the defendant's voluntary conduct, however, the inquiry need only be as comprehensive as the circumstances permit." *Thomas v. Wainwright*, 767 F.2d 738, 741 (11th Cir.1985). An accused who

seeks substitution of counsel in mid-trial "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution." *Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir.1985).

■ Petitioner's claim arose on the second day of trial when he interrupted the prosecutor's direct examination of a witness by stating repeatedly that he wanted a new lawyer. He said that he had asked for a new attorney a month and a half earlier. Petitioner did not say why he wanted a different attorney, and the trial court did not inquire. The trial court merely noted that defense counsel was Petitioner's fourth or fifth attorney. The court apparently believed that Petitioner was trying to abort the trial. (Tr. July 21, 1998, at 41–43).

Later, on the same day, the trial court permitted Petitioner to voice his concerns. Petitioner told the trial court that his attorney was not doing anything. Petitioner said that he had asked to have his mother and other witnesses subpoenaed. He said that his mother would testify that the victim and the victim's mother told her (Petitioner's mother) that the crime was all a dream. Petitioner wanted his ex-wife and his ex-wife's daughters to testify as character witnesses. The trial court discussed Petitioner's concerns with him and then permitted him to talk with his attorney. (*Id.* at 145–51). Petitioner subsequently informed the trial court that he had no choice in whether to take the stand and that he had been told that the prosecutor "would hang [him]" if he testified. (*Id.* at 152–53).

Although the trial court initially did not inquire into Petitioner's objections regarding defense counsel, the trial court subsequently permitted Petitioner to air his grievances about his attorney. Petitioner expressed a difference of opinion regard-

ing trial strategy, but the record does not reveal an irreconcilable conflict or total lack of communication. As explained by the Michigan Court of Appeals, Petitioner

did not argue [a fundamental breakdown in the relationship between counsel and client] in his outburst, and the record is devoid of any evidence that suggests that the relationship had fundamentally broken down.

*Adams,* at *7. In the state court's opinion, Petitioner's "request [for a different attorney] was simply one of many apparent attempts to delay, disrupt, or create appealable error in his trial." *Id.*

Petitioner has not shown that the Supreme Court requires trial courts to do anything more than the trial court did in this case. The trial court's inquiry into the conflict between Petitioner and his attorney was adequate, and the court's refusal to grant Petitioner's mid-trial request for substitute counsel was objectively reasonable. Therefore, the state appellate court's denial of relief did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law.

## J. *Assistance of Counsel*

Petitioner's twelfth claim alleges that defense counsel was ineffective and deprived Petitioner of a fair trial. The Michigan Court of Appeals concluded on review of this claim that Petitioner was not deprived of effective representation. The question here is whether the state court's adjudication of Petitioner's claim was an unreasonable application of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 28 U.S.C. § 2254(d)(1).

■ The Supreme Court ruled in *Strickland* that, to prevail on a claim of ineffective assistance of counsel, a party must show that defense counsel's perform-

ance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. The first prong of this test requires showing that defense "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. The second prong requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■ "Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

### 1. *Failure to Object to Hearsay*

■ Petitioner's first allegation about his attorney is that the attorney failed to object to prejudicial hearsay statements used to bolster the victim's testimony. The alleged hearsay consisted of: (1) Krystal Adams' testimony that she spoke with the victim and then told the victim's mother (Theresa Archey) about the allegations of criminal sexual conduct; and (2) Theresa Archey's testimony that Krystal Adams told her about the allegations of sexual misconduct. These instances of alleged hearsay did not prejudice the defense in light of the victim's testimony concerning Petitioner's conduct toward her and Krystal Adams' testimony that she saw Petitioner raping the victim.

Petitioner also contends that his attorney should have objected to Theresa Archey's testimony that the victim was afraid to tell anyone what happened to her because she thought that Petitioner would kill her parents. The Michigan Court of Appeals opined that this testimony was not hearsay, because it was not offered to prove the truth of the matter asserted. Instead, "the statements were used to prove why the victim did not tell her family about the sexual assault and to explain why the victim made false allegations of abuse against her mother and stepfather." *Adams,* at *8–9.

■ This Court is required to defer to a state court's interpretation of state law. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Israfil v. Russell,* 276 F.3d 768, 771 (6th Cir.2001), *cert. denied,* 535 U.S. 1088, 122 S.Ct. 1985, 152 L.Ed.2d 1041 (2002). Because the alleged hearsay either was not hearsay or it did not prejudice the defense, the failure to object to the testimony did not amount to ineffective assistance of counsel.

### 2. *Failure to Impeach Krystal Adams*

■ Krystal Adams testified at trial that, some time during the interval of September to November of 1995, she witnessed Petitioner raping the victim. The victim's aunt testified that the assault occurred shortly before or shortly after November 29, 1995. Petitioner contends that his attorney should have impeached Krystal with (1) her statement to the police that she witnessed the incident in November of 1995 and (2) documentary evidence demonstrating that Krystal was placed in foster care on October 13, 1995, and, therefore, could not have witnessed the alleged assault.

The Michigan Court of Appeals in its decision said that,

defense counsel ... did cross-examine [Krystal Adams] extensively concerning the time period that she was in foster care and how little she saw of [Petition-

er] during that time. Defense counsel also argued that the incident could not have occurred at the time [Krystal] alleged because she was in foster care. . . .

Defense counsel's decision not to impeach [Petitioner's] twelve-year-old daughter with her police statement may have been trial strategy in that a confrontational cross-examination using a police statement with a twelve-year-old witness may have hurt the defense more than help it.

*Adams,* at \*9. *See also* Tr. July 21, 1998, at 16–21, 30–31, 34–35 (defense counsel's cross-examination of Krystal Adams regarding her time in foster care); *id.* at 175–76 (defense counsel's closing argument that Krystal could not have observed the crimes).

The court of appeals concluded that, "because defense counsel made the substantive argument that [Krystal] was not at the house at the time of the alleged assault, and the decision concerning impeachment was a matter of trial strategy, defense counsel's alleged omission did not constitute ineffective assistance of counsel." *Adams,* at \*9.

This Court agrees that defense counsel's cross-examination of Krystal Adams did not amount to deficient performance. Even if it were deficient performance, it did not prejudice the defense. Therefore, the state appellate court's conclusion that defense counsel was not ineffective was not contrary to, or an unreasonable application of, *Strickland.*

### 3. *Failure to Present Documentary Evidence*

■ Next, Petitioner alleges that his trial attorney should have presented documentary evidence showing that Petitioner did not live in Melvindale from September to November of 1995. According to Petitioner, documentary evidence from the Michigan Employment Security Commis-

sion (MESC) would have shown that he could not be guilty because he was not living at the Melvindale address when the crimes allegedly occurred there.

Defense counsel did attempt to introduce the evidence, but he admitted that the records would not prove that Petitioner was living at the address shown in MESC records. He noted that a person can fill out an address on MESC forms and have someone else pick up the check. (Tr. July 20, 1998, at 4–5). The trial court was not inclined to admit the evidence because defense counsel did not establish a proper foundation by showing that someone other than Petitioner could verify that he lived at the address listed on the form he completed. (*Id.* at 5–9).

The Michigan Court of Appeals found no merit in Petitioner's claim, because "[v]arious witnesses testified to [Petitioner's] transient lifestyle, and four witnesses testified that he was staying at someone else's house on the night of the alleged assault." *Adams,* at \*9. This Court agrees with the state court that, "defense counsel's omission in obtaining [Petitioner's] unemployment records did not constitute ineffective assistance of counsel." *Id.*

### 4. *Failure to Call Defense Witnesses*

■ Petitioner contends that his attorney should have called defense witnesses to attest to his character and to prove that the victim admitted that she dreamed the criminal incident. Petitioner wanted to produce his ex-wife and her three daughters to show that he did not molest them. However, Petitioner offered no evidence that his ex-wife and her daughters would have testified favorably, and the fact that Petitioner might not have molested his ex-wife's three daughters would not have proved that he did not assault the victim in this case. Moreover, defense counsel stat-

ed in his post-trial letter to the Attorney Grievance Commission that he did deliver a subpoena to the ex-wife's home, but she did not appear at trial and her testimony would not have been helpful.

Petitioner wanted to produce his mother, whom he expected to testify that the victim and the victim's mother told her that the victim merely dreamed that the assault occurred. Petitioner was able to present this defense without having his mother testify. And, as the Michigan Court of Appeals recognized,

> [Petitioner] provided no proof that his mother would have testified as he alleged, and the lower court records provides no such support. Even assuming that she would have, [Petitioner] was not deprived of a substantial defense, and the evidence against [him] was overwhelming. [His] own daughter witnessed the incident, and the circumstances surrounding the incident were corroborated by several witnesses.

*Adams*, at *10.

The Court concludes that defense counsel was not ineffective for failing to call Petitioner's ex-wife, her three daughters, and Petitioner's mother as witnesses. Therefore, the state court's conclusion that Petitioner was not deprived of effective representation did not result in a decision that was contrary to, or an unreasonable application of, *Strickland.*

**5. *Failure to Object to Jury Instructions on Other Acts Evidence***

■ The prosecution elicited testimony from the victim that Petitioner had assaulted her at other times and in other cities. The prosecution also elicited testimony from one of Petitioner's daughters that he touched her in a sexual way. Petitioner claims that his attorney should have objected to the trial court's jury instructions on these other acts. Petitioner as-

serts that the instructions as given not only did not limit use of the evidence, but they invited the jury to use the evidence as substantive evidence of Petitioner's guilt.

The disputed instructions read:

> Now, you heard evidence that was introduced to show that the defendant committed or may have committed over (sic) improper acts, [for] which he is not on trial. Presently I'm talking about the testimony involving Ms. Beach.

> If you believe this evidence you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the defendant acted purposely. That is not by accident or mistake, or because he misjudged a situation. That the defendant used a plan, or characteristic scheme or since (sic). You must not consider this evidence for any other purpose. that he had used before (sic)

> For example, you don't look at that and say, well, you know, he did something like this before so he must be guilty. You don't look at it in that way. You look for it, for the benefit, purpose that I'm telling you.

> For example, you must not decide that it shows that the defendant is a bad person, or that he is likely to commit the crime.

> You must not convict the defendant because you think he is guilty of other bad conduct.

> The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crimes charged here, or you must find him not guilty of that crime.

> You also heard evidence that was introduced to show that the defendant had engaged in improper sexual conduct [for] which the defendant is not on trial, regarding other alleged acts regarding

[the complainant], who was not formally charged in the Information.

If you believe this evidence you must be very careful to consider it for only one limited purpose. That is to help to judge the believability of testimony regarding the acts for which the defendant is now on trial.

You must not consider this evidence for any other purpose.

For example, you must not decide that it shows that the defendant is a bad person, or that the defendant is likely to commit crimes. You must not convict the defendant here because he is guilty of other bad conduct.

(Tr. July 22, 1998, at 12–14). These instructions adequately informed the jurors that they should not convict Petitioner on the basis of uncharged criminal conduct about which witnesses testified.

The Michigan Court of Appeals concluded that the instructions were proper and that defense counsel's failure to make a futile objection did not amount to ineffective assistance. This Court agrees that defense counsel's failure to object to the jury instructions on other acts did not amount to deficient performance and did not prejudice the defense. Therefore, the state court's determination that defense counsel was not ineffective was not contrary to, or an unreasonable application of, *Strickland.*

### K. *The Trial Court's Comment During Voir Dire and the Jury Instruction on Reasonable Doubt*

 Petitioner's next claim attacks the trial court's comment that the jurors' verdict "should not be a matter of conscience" and the trial court's jury instruction on "reasonable doubt." Petitioner alleges that the trial court erroneously omitted the concepts that a juror should find guilt to a moral certainty and that a reasonable doubt exists when the evidence would make a juror hesitate to act in his own affairs. Respondent contends that this claim is procedurally defaulted.

 A procedural default in the habeas context is "a critical failure to comply with state procedural law...." *Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997). The doctrine of procedural default provides that,

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

 In Michigan, a defendant must make a contemporaneous objection to jury instructions to preserve the claim for appellate review. *See People v. Kelly,* 423 Mich. 261, 271–72, 378 N.W.2d 365 (1985). Petitioner procedurally defaulted his claim about the trial court's comment during *voir dire* and the trial court's reasonable-doubt instruction by not objecting to the comment and jury instruction during trial. (Tr. July 20, 1998, at 38–42; July 22, 1998, at 5).

The Michigan Court of Appeals relied on Petitioner's procedural error by stating: "When, as here, defendant did not object at trial, appellate review of jury instructions is forfeited unless relief is necessary to avoid manifest injustice." The failure to object was an adequate and independent state ground on which the court of appeals could rely. *See Engle v. Isaac,* 456 U.S. 107, 110, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (stating that a defendant who fails

to comply with a state court rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas proceeding). In addition, the rule was effective long before Petitioner's 1998 trial. *See People v. Handley*, 415 Mich. 356, 360, 329 N.W.2d 710 (1982) (stating as early as 1982 that "instructional error should not be considered on appeal unless the issue has been preserved by an objection in the trial court"). Therefore, in order for this Court to review Petitioner's claim, he must show cause and prejudice or a miscarriage of justice.

■ Petitioner has not alleged "cause" for his procedural default. The Court, therefore, need not determine if he was prejudiced by the alleged violation of federal law. *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

■ The remaining question is whether this Court's failure to consider the substantive merits of Petitioner's claim will result in a miscarriage of justice. The exception for miscarriages of justice requires showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851.

Petitioner has not alleged that he is innocent of the crimes for which he was convicted, and he has not shown that, in light of some new and reliable evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329, 115 S.Ct. 851. Accordingly, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the substantive merits of Petitioner's thirteenth claim. His state procedural default bars habeas review of the claim.

**L. Double Jeopardy**

Petitioner was convicted of two counts of first-degree CSC. He argues that his right not to be placed in double jeopardy was violated because the testimony did not show that the first-degree CSC convictions arose out of two separate and distinct sexual penetrations.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. The Clause "is applicable to the States through the Fourteenth Amendment," *Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and it protects ... against multiple punishments for the same offense. *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 306–07, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).

■ The protection against cumulative punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (citations omitted). The Michigan legislature intended to punish separately each act of

criminal sexual penetration. *People v. Wilson,* 196 Mich.App. 604, 608, 493 N.W.2d 471, 474 (1992).

■ Petitioner's claim is based on the following excerpt from the transcript of trial:

Q [by the prosecutor] When your uncle placed his dick in your private part, did he stop for a while?

A [by the complainant] For a minute.

Q Okay. After he stopped for a while what happened, did he go away and not come back?

A No.

Q What happened?

A He kept on.

Q He did it again?

A Yes.

(Tr. July 20, 1998, at 142–43).

Petitioner interprets the complainant's answer "yes" to the prosecutor's leading question, "He did it again?" to mean that there was a pause during one act of sexual intercourse. However, the victim's responses could also be interpreted to mean that Petitioner sexually penetrated the victim, withdrew his penis, but did not leave the room, and then penetrated the victim a second time.

The Michigan Court of Appeals concluded that a rational trier of fact could have found that Petitioner committed two acts of vaginal penetration and, therefore, Petitioner's conviction on two counts of first-degree CSC did not constitute double jeopardy. This conclusion was objectively reasonable in light of the victim's testimony. Therefore, the state court's conclusion was not contrary to, or an unreasonable application of, Supreme Court decisions interpreting the Double Jeopardy Clause.

### M. *Cumulative Effect of Errors*

Petitioner's final claim is that the cumulative effect of the errors requires reversal. This claim lacks merit because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir.), *opinion corrected on denial of reh'g,* 307 F.3d 459 (2002), *and cert. denied,* —— U.S. ——, 123 S.Ct. 1621, 155 L.Ed.2d 489 (2003). Therefore, the state courts' denial of relief was not contrary to any Supreme Court decision so as to warrant habeas relief. *Id.*

### IV. *Conclusion*

For all the reasons given above, the Court concludes that Petitioner's claims lack merit. Accordingly, the application for a writ of habeas corpus is **DENIED.**