**Jason BROWN, Petitioner,**

v.

**Carmen PALMER, Respondent,**

**No. CIV. 04–CV–72303–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

March 2, 2005.

James Brown, Ionia, MI, pro se.

Debra M. Gagliardi, Michigan Department of Attorney General, Lansing, MI, for Respondent.

## OPINION AND ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS[1]

TARNOW, District Judge.

Jason Brown, ("petitioner"), presently confined at Camp Ottawa in Iron River, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* habeas application, petitioner challenges his convictions for carjacking, M.C.L.A. 750.529a; and armed robbery, M.C.L.A. 750.529. Due to lack of evidence of guilt, petitioner's application for writ of habeas corpus is **GRANTED.**

### I. Background

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. Petitioner filed this timely petition for habeas corpus relief.

The Respondent's conclusory response raising "any and all available defenses including failure to exhaust state court remedies, the statute of limitations, and procedural default for each claim to which it is applicable. To the extent that any of the alleged trial errors are meritorious, Respondent asserts that they did not have a substantial impact or influence on the outcome of Petitioner's trial. Respondent also objects to Petitioner's statement of facts to the extent that the statements are not supported by the record. Respondent opposes any request for discovery, eviden-tiary hearings, bond, oral argument, or any other relief." [Respondent's answer, pp. 3–4] is of no consequence. The points must be raised with specific arguments.

Petitioner was charged with armed robbery, carjacking, and assault with intent to murder under an aiding and abetting theory for an incident which occurred at a gas station in Detroit, Michigan on January 25, 1999. Petitioner was bound over to the Wayne County Circuit Court to stand trial following a preliminary examination in the 36th District Court. On April 16, 1999, the Wayne County Circuit Court granted petitioner's motion to quash the information and dismissed the case for insufficient evidence. The prosecutor appealed and the Michigan Court of Appeals reversed and reinstated the charges. *People v. Brown*, 219896 (Mich.Ct.App. October 31, 2000).

The prosecutor's theory at trial was that petitioner aided and abetted the armed robbery and carjacking by being in the lookout car and as the getaway driver.

Jerome Campbell testified that he drove his 1984 Buick Regal to a gas station on Schoolcraft Avenue at about 1:30 a.m., along with his friends Bernard Turner and William Clemons. The men went to the gas station to buy some transmission fluid. Campbell noticed petitioner sitting by himself in a burgundy Monte Carlo parked at the gas station.

Campbell went into the gas station. A man came out of the gas station and got into petitioner's car. Turner had lifted up the hood of Campbell's car and Clemons had gone inside the gas station to use the restroom. Campbell observed that petitioner had pulled his Monte Carlo up to a gas pump. At this point, a man with a gun came towards Campbell and Turner. Turner ran and the man shot at him. The

---

1. Staff Attorney Daniel H. Besser provided quality research assistance.

man then took Campbell's Buick Regal. While this was happening, petitioner was staring at them.

Campbell ran to petitioner's car. Petitioner told Campbell that he did not know the man with the gun and that he had only given the man a ride. Campbell and Clemons then pulled petitioner out of his car, with Campbell punching petitioner several times. Petitioner flagged down a passing motorist and told the person that he was being carjacked. Campbell and Clemons drove petitioner's car to the police station to file a report.

Campbell acknowledged that he never saw a gun in petitioner's hand, nor did he ever hear petitioner say anything to the man who committed the robbery. Campbell never observed petitioner making any gestures towards this man either. In his statement to the police, Campbell never mentioned anything about the man who committed the robbery walking out of the gas station. Instead, Campbell had told the police that he had seen two black males inside of petitioner's Monte Carlo, and that one man had exited the car and had pulled a gun on them. Campbell acknowledged that when he pulled into the gas station, he didn't know whether petitioner was looking at him or the spiffy rims on his Regal.

William Clemons testified that he also observed the man who robbed them come out of the gas station. When Clemons and his friends arrived at the gas station, there was only one person sitting inside petitioner's Monte Carlo, although Clemons had previously told the police that he had seen two men sitting inside the vehicle. A man came towards Clemons with a gun and ordered him out of Campbell's car. Clemons testified that he and his friends had only been at the gas station for about a minute before they were robbed. Clemons testified that petitioner got out of his car and looked at the robbery while it was taking place. Clemons also did not hear petitioner say anything to the man who robbed them. Clemons acknowledged that he and Campbell had broken one of petitioner's car windows when they removed him from his car.

Bernard Turner's testimony was similar to the testimony of his friends.

Investigator Charles Spruce of the Detroit Police Department determined that the Monte Carlo taken by Campbell and Clemons from the gas station was registered to petitioner. Petitioner was arrested for these crimes. Investigator Spruce acknowledged that he had no evidence that petitioner had any conversation with the gunman at any time. This gunman was never arrested.

A motion for directed verdict was denied, even though the trial court twice referred to the evidence in the case being "tenuous." Petitioner was found guilty of armed robbery and carjacking and not guilty of assault with intent to murder. Petitioner was sentenced to ten years and ten months to eighteen years in prison.

Petitioner's conviction was affirmed on appeal, but the case was remanded for resentencing. *People v. Brown*, 236317, 2003 WL 327867 (Mich.Ct.App. February 11, 2003); *lv. den.* 469 Mich. 876, 668 N.W.2d 148 (2003). On September 16, 2004, petitioner was resentenced to five to ten years in prison on these two convictions.

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds which were raised in the state courts:

I. Jason Brown's conviction for robbery armed and carjacking violates due process because there was insufficient evidence to support the theory [that] he aided and abetted an unknown perpetrator in that offense, in violation of U.S.

Const., AM. XIV, Mich. Const 1963, Art. 1, § 17.

II. The trial court committed reversible error by engaging in advocacy which departed from the required role of neutrality and served to blunt the impact of cross examination and rehabilitate a *res gestae* witness while also demeaning defense counsel, in violation of U.S. Const., Ams. VI, XIV.

III. There is plain error involving improper vouching in [the] argument of the prosecutor, in violation of Mr. Brown's Sixth and Fourteenth Amendment rights to a fair trial and due process, U.S. Const., Ams. VI, XIV, Mich. Const 1963, Art. 1, § 17.

## II. Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir.1997).

Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11, 120 S.Ct. 1495.

## III. Discussion

### A. The sufficiency of evidence claim.

■ Petitioner has shown there was insufficient evidence to convict him under an aiding and abetting theory of armed robbery and carjacking.

In rejecting this claim, the Michigan Court of Appeals concluded that circumstantial evidence existed from which a rational jury could find that petitioner knowingly assisted the gunman in committing the offenses. The Court relied on the following: (1) that at the time of the carjacking, petitioner was inside of his car, which was positioned near an exit of the gas station, (2) that petitioner kept the engine of his car running and, although he was parked at a gas pump, did not pump any gas, (3) that petitioner had his window down in spite of the fact that it was snowing, (4) that the carjacker exited the gas station before the robbery and got into petitioner's car, before getting out of petitioner's car armed with a gun.

The carjacker subsequently ordered the victims to shut the hood of their car and get away from it. The carjacker then pushed one of the victims and, when the victim ran, the carjacker fired his gun at him.

Petitioner did not leave while the carjacking was taking place, waiting instead for the carjacker to get into the victims' car and drive away. The Michigan Court of Appeals indicated that petitioner tried to drive away quickly, but his tires spun on the snow. The victims caught up to petitioner, attacked him, and took his car to the police station. Although petitioner claimed that he had merely given the carjacker a ride and that the victims had actually carjacked him, petitioner never reported to the police that his car had been stolen. *People v. Brown*, 2003 WL 327867, **2–3.

■ A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir.2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Johnson v. Hofbauer*, 159 F.Supp.2d 582, 596 (E.D.Mich.2001). Moreover, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Adams v. Smith*, 280 F.Supp.2d 704, 714 (E.D.Mich.2003) (*quoting Jackson*, 443 U.S. at 324, n. 16, 99 S.Ct. 2781).

■ Under Michigan law, to support a finding that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;

2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*People v. Carines*, 460 Mich. 750, 757–58, 597 N.W.2d 130 (1999).

■ In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir.1981); *cert. den.* 455 U.S. 1028, 102 S.Ct. 1734, 72 L.Ed.2d 150 (1982). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich.App. 558, 568, 540 N.W.2d 728 (1995); *See also Meade v. Lavigne*, 265 F.Supp.2d 849, 858 (E.D.Mich.2003).

■ To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich.App. 604, 614, 493 N.W.2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich.App. 9, 14, 533 N.W.2d 359 (1995).

■ In the present case, the evidence establishes, when considered most favorably to the prosecution, that petitioner was merely present when the armed robbery and carjacking occurred. Under Michigan law, mere presence, even with knowledge

that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense, "nor is mere mental approval sufficient, nor passive acquiescence or consent." *Fuller*, 662 F.2d at 424 *(quoting People v. Burrel*, 253 Mich. 321, 323, 235 N.W. 170 (1931)).

In *Fuller v. Anderson, supra*, the Sixth Circuit held that in a prosecution for felony-murder, the evidence established, at most, that the petitioner was present when another individual firebombed the house. That was held to be insufficient to establish beyond a reasonable doubt that petitioner took conscious action to aid in the commission of the underlying arson. *Id.* at 424. The evidence in *Fuller* was the petitioner had looked around while another person started the fires that caused the victims' death. The Sixth Circuit agreed with the district court that although it may have been reasonable to "speculate" from this evidence that petitioner acted as a lookout, a rational jury could not find it to be proof beyond a reasonable doubt that the petitioner aided and abetted in the offense, where there was no evidence that the petitioner intended to burn the victims' home and the evidence that he knew that this other individual planned to burn it was "simply too meager" to support his conviction. *Id.* at 424.

Likewise, in *Hopson v. Foltz*, 818 F.2d 866, (Table)1987 WL 37432, * 2 (6th Cir. May 20, 1987), the Sixth Circuit granted a writ of habeas corpus, finding that there was insufficient evidence for a jury to find beyond a reasonable doubt that the petitioner participated as an aider and abettor in the murder for which he was convicted. The testimony at most indicated that the petitioner in *Hopson* was present at the shooting, that he may have argued with the victim during the evening prior to the shooting, that he may have known that someone else intended to harm the victim,

and that he may have taken the empty shell casings after the shooting. However, there was no proof that the petitioner "acted in pre-concert" with the shooter to commit the murder or that he said or did anything to "support, encourage, or incite the commission of the crime." *Id.*

Likewise, in *Kelly v. Roberts*, 998 F.2d 802, 808–09 (10th Cir.1993), the Tenth Circuit held that the evidence was insufficient to support a conviction for robbery and felony-murder based upon the state's theory that the petitioner aided and abetted the robbery by acting as the getaway car driver, "without impermissibly stacking inferences."

In the present case, there was insufficient evidence presented to conclude that petitioner aided and abetted in the armed robbery and carjacking. There was no evidence presented that petitioner ever possessed a weapon or handed a weapon to the gunman. There was no testimony that petitioner said anything to the gunman or offered any words of encouragement. Nor was there any evidence that petitioner made any gestures to the gunman. As petitioner notes, there was no evidence presented to rebut petitioner's own statement that he did not know the gunman and had only given him a ride. In fact, there was no evidence presented to establish the identity of the gunman or to show that petitioner and the gunman had any pre-existing relationship or had acted in "pre-concert" to commit the armed robbery and carjacking.

The facts relied upon by the Michigan Court of Appeals in affirming petitioner's conviction may have supported a "reasonable speculation" that petitioner acted as a lookout for the gunman, but these facts do not amount to proof beyond a reasonable doubt. While a jury could infer from these facts that petitioner aided and abetted the armed robbery and carjacking, there are

other plausible inferences that could be drawn also. For example, the Michigan Court of Appeals noted that petitioner's car was parked near an exit, but ignored Campbell's own testimony that the gas station had six driveways or exits and that petitioner was actually parked at a gas pump, not at the exit, which was twenty feet away from the pump.

The Michigan Court of Appeals also relied on the fact that petitioner's car was parked at the gas pump, but that he had not pumped any gas. The Michigan Court of Appeals also pointed to the fact that petitioner had his window rolled down, even though it was snowing. The Michigan Court of Appeals ignored William Clemons' testimony that the entire robbery took only about one minute to commit. It would not be unusual for a person to take a minute to park at a gas pump, before turning off his car engine and getting out to pump gasoline.

There was no discussion of why a person stealing a car needed a getaway driver. Nor was there any discussion of why a person, who was supposed to be aiding the crime, would not either leave before the completion of the crime or leave his car to assist the robber. Finally, there is no discussion how the prosecution could concede in closing argument there was not sufficient evidence of assault with intent to commit murder, but not concede there was insufficient evidence of the other two related charges.

> With regards to the assault with intent to murder, I'm going to tell you right now, throw it out the window. Don't find him guilty of that. Okay? The assault with intent to murder, the Prosecution. This table is getting up and saying, he, the evidence doesn't show enough for him to be convicted of that. That's what this table said. T. 178.

The prosecutor concluded with:

> I'm telling you to throw out the assault with intent to murder because I don't necessarily know or submit to you that the evidence has shown to you that he shared he intent to kill somebody. That's what has to be shown. So just reduce it to those two. T. 185.

On rebuttal, the prosecutor said:

> When you first get into the jury room, throw away, I'm telling you right now, assault with intent to murder. T. 199.

In this case, without impermissibly stacking inferences, there is insufficient evidence for a rational trier of fact to conclude that petitioner had the intent to aid and abet an armed robbery or carjacking. There was no evidence that petitioner even knew that this gunman was going to commit a robbery. The Michigan Court of Appeals' conclusion that the evidence was sufficient to convict petitioner is contrary to, or an unreasonable application of, *Jackson v. Virginia.*

Petitioner is therefore entitled to habeas relief. The appropriate remedy is to issue a writ of habeas corpus outright, rather than conditioning the grant of the writ on the state's failure to retry the petitioner. *See Sera v. Norris,* 312 F.Supp.2d 1100, 1125 (E.D.Ark.2004). The petition for writ of habeas corpus is hereby granted with respect to petitioner's insufficiency of evidence claim and the Court orders that petitioner's convictions for armed robbery and carjacking be vacated. Because petitioner has been incarcerated for over six years for a crime that the State of Michigan failed to prove, this Court will order that petitioner shall be released immediately from incarceration. *See Kelly v. Roberts,* 998 F.2d at 809, n. 11.

Because the Court is granting petitioner a writ of habeas corpus on his first claim, the Court will only briefly address petitioner's two remaining claims.

## B. The judicial misconduct claim.

In his second claim, petitioner contends that he was deprived of a fair trial, when the trial court judge began asking questions of Jerome Campbell. Petitioner claims that these questions crossed the line of judicial neutrality and also demeaned defense counsel.

The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir.1995)(citing to *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *In Re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir.1995). To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852–53 (10th Cir.1979); *See also Hines v. Redman*, 805 F.2d 1034, 1986 WL 18068, * 2 (6th Cir. October 30, 1986). A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief

could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir.1985).

It is not unconstitutional under the Due Process Clause for a state trial judge to seek clarification from witnesses at a criminal trial. *Wenglikowski v. Jones*, 306 F.Supp.2d 688, 695 (E.D.Mich.2004). In fact, it is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony. *United States ex. rel. Kurena v. Thieret*, 659 F.Supp. 1165, 1172 (N.D.Ill.1987). In the present case, the trial court judge was merely attempting to clarify Campbell's answers to the questions. There was no evidence that the trial court judge belittled defense counsel or demonstrated any bias for the prosecution. Accordingly, petitioner is not entitled to habeas relief on this claim.

## C. The prosecutorial misconduct claim.

In his third claim, petitioner contends that the prosecutor engaged in improper vouching.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999)(internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence, including the conclusion that the evidence proves the defendant's guilt. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a per-

sonal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir.1987). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins*, 209 F.3d 486, 537 and n. 43 (6th Cir.2000).

Petitioner first points to the fact that the prosecutor indicated in closing argument that he believed that the evidence showed that petitioner was the accomplice. The trial court judge, however, immediately rebuked the prosecutor and told him that he could not tell the jury what he believed. The prosecutor acknowledged in front of the jury that "[P]rosecutors can not do that." An "on-the-spot curative instruction" can make a difference in preventing improper prosecutorial argument or remarks from rendering a trial fundamentally unfair. *Romine v. Head*, 253 F.3d 1349, 1369 (11th Cir.2001). Here, the judge in the jury's presence indicated that it was improper for the prosecutor to state what he believed. Moreover, the trial court instructed the jury after closing arguments that the lawyers' arguments and statements were not evidence. In light of this instruction, any vouching by the prosecutor did not render petitioner's trial to be fundamentally unfair. *Byrd*, 209 F.3d at 537.

Petitioner also contends that the prosecutor somehow vouched for the carjacking and armed robbery charges by conceding in his closing argument that there was insufficient evidence to convict petitioner of assault with intent to commit murder. Petitioner has pointed to no cases which suggest that it is improper for a prosecutor to concede in his closing argument that there is insufficient evidence to convict on one charge, but sufficient evidence to convict a defendant on the remaining charges. Accordingly, petitioner is not entitled to habeas relief on his final claim.

## IV. ORDER

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS UNCONDITIONALLY GRANTED. PETITIONER'S CONVICTIONS FOR ARMED ROBBERY AND CARJACKING ARE ORDERED TO BE VACATED AND SET ASIDE. RESPONDENT IS ORDERED TO RELEASE PETITIONER FROM CUSTODY FORTHWITH.