Daniel Barry COUCH, Petitioner,

v.

Raymond BOOKER, Respondent.

Civil No. 2:06–15119.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 3, 2009.

Carole M. Stanyar, Detroit, MI, for Petitioner.

Brian O. Neill, Michigan Department of Attorney General, Lansing, MI, for Respondent.

*OPINION AND ORDER CONDITION-ALLY GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS*

ARTHUR J. TARNOW, District Judge.

Daniel Barry Couch, ("Petitioner"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder, M.C.L.A. 750.317. Because petitioner was denied the right to retain the counsel of his choice and was also denied the effective assistance of trial counsel by his court-appointed attorney, the petition for writ of habeas corpus is conditionally granted.

## I. Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court, in which he was jointly tried with his co-defendant, Richard Lee Collar. Petitioner has provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent has not disputed these facts in his answer. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record. *See Dickens v. Jones,* 203 F.Supp.2d 354, 360 (E.D.Mich. 2002). Because the facts do not need to be repeated in their entirety, the Court will recite *verbatim* the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction. *See Dittrich v. Woods,* 602 F.Supp.2d 802, 803 (E.D.Mich.2009):

> This case arises from an incident that occurred when a party went awry. After decedent consumed an "extremely large" line of cocaine along with a second one, he began to behave in a bizarre and unpleasant fashion. Ultimately, the decedent was found having what appeared to be forced anal intercourse with a woman. Collar pulled the decedent from the woman. The defendants

and some other men then dragged the decedent outside where the defendants took part in an extensive beating of the decedent, who did not defend himself. The decedent died as a result of the beating. *People v. Couch,* No. 233176, 2003 WL 21465335 *1 (Mich.Ct.App. June 24, 2003).

Following petitioner's conviction, a *Ginther* hearing was conducted on petitioner's ineffective assistance of trial counsel claims on November 14 and 15, 2001.[1] The trial court denied petitioner's motion for a new trial on February 4, 2002.

On May 29, 2002, petitioner retained new appellate counsel to replace his first two appellate attorneys after petitioner expressed dissatisfaction with their level of representation. In June of 2002, the Michigan Court of Appeals struck the appellate brief that had been filed by petitioner's first two appellate attorneys and permitted new counsel to file a replacement appellate brief.

A new appellate brief on petitioner's behalf, which raised six issues, including the ineffective assistance of trial counsel and the ineffective assistance of petitioner's first two appellate attorneys, was filed. Counsel also filed a motion to remand for an additional evidentiary hearing on petitioner's ineffective assistance of trial counsel claims, contending that petitioner's first two appellate counsel inadequately litigated petitioner's ineffective assistance of trial counsel claims at the first Ginther hearing. The Michigan Court of Appeals denied this motion to remand. *People v. Couch,* No. 233176, * 1 (Mich.Ct.App. April 25, 2003).

Petitioner's conviction was affirmed on appeal. *People v. Couch,* No. 233176, 2003 WL 21465335 *1 (Mich.Ct.App. June 24,

---

**1.** *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1973).

2003); *lv. den.* 469 Mich. 990, 674 N.W.2d 154 (2003).

Petitioner then filed a post-conviction motion for relief from judgment, in which he again alleged the ineffective assistance of trial counsel. Petitioner further alleged that he was denied the effective assistance of appellate counsel both by his first appellate counsel, as well as by his replacement appellate counsel. Petitioner also requested an evidentiary hearing on his claims. The trial court denied the motion for relief from judgment without an evidentiary hearing. *People v. Couch,* No. 00–17330–FC (Oakland County Circuit Court, December 19, 2005). The Michigan appellate courts denied petitioner leave to appeal. *People v. Couch,* No. 267737 (Mich.Ct.App. July 27, 2006); *lv. den.* 477 Mich. 917, 722 N.W.2d 878 (2006).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Petitioner was denied his Sixth Amendment right to counsel of choice and due process of the law when the trial court abused its discretion in denying Petitioner a continuance to retain counsel of choice.

II. State officials/authorities withheld and failed to disclose exculpatory Brady material in violation of the Fourteenth Amendment due process clause of the U.S. Constitution.

III. Petitioner Couch was denied a fair trial and due process when the trial court abused its discretion in allowing photographs of decedent to be published to the jury where witnesses used were inadequate for a proper foundation with respect to Petitioner Couch.

IV. Under conviction for second-degree murder, either as principal or under an aiding and abetting theory, there is an insufficiency of evidence as to causation where there exists no reasonable and direct causal connection between Petitioner's conduct and decedent's death, and there exists intervening-cause-of-death defenses, in violation of due process.

V. Petitioner Couch was denied his Sixth Amendment right to the effective assistance of counsel that resulted in the denial of his right to receive adequate representation and a fair trial.

VI. Petitioner Couch was unconstitutionally prejudiced by ineffective assistance of appellate counsel.

VII. Petitioner received ineffective assistance of counsel where his attorney failed to investigate and pursue Petitioner's causation defense issue, failed to adequately defend against the charges, failed to familiarize himself with discovery and lower court file, failed to consult with and provide exculpatory and related material to appointed expert, failed to cross examine state expert with, inter alia, the exculpatory AMR/EMS medical report, to expose false and/or perjurious testimony in the state's case, failed to call three supporting eyewitnesses, in continuity with counsel's testified to trial strategy and Petitioner's claim of actual innocence, in violation of the Sixth Amendment.

VIII. Petitioner's conviction was obtained by the knowing use of false and/or perjurious testimony in violation of federal law under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution when state officials/agents utilized, allowed, and failed to correct known false and/or perjurious testimony of state expert Dr. Dragovic and trial counsel Correll, at Petitioner's trial and evidentiary hearing, in deliberate, misleading, deceptive, and contriving practices, in reckless disregard for the truth.

IX. There is a constitutionally, evidentiary, and legal insufficiency of evidence

to establish causation beyond a reasonable doubt based on false and/or perjurious expert testimony that is incompetent and unreliable, failed to comport with underlying facts of case, and failed to meet qualifications or reliability or MRE/FRE as required under due process of the U.S. Constitution.

X. Petitioner received constitutionally ineffective assistance of appellate counsel on appeal where his attorney failed to investigate and adequately pursue Petitioner's causation defense issue, failed to adequately defend Petitioner against the charges on appeal, failed to adequately familiarize themselves with court records and discovery, failed to call three eyewitnesses at Petitioner's evidentiary hearing whom would have supported Petitioner's claim of innocence, undermined trial counsel's trial strategy he testified he pursued, and failed to identify, raise and argue the false and/or perjurious testimony, and other constitutional issues before the court, in violation of Petitioner's constitutional rights under the V, VI, VIII, XIV Amendments of the U.S. Constitution.

XI. Petitioner was denied a fair and impartial trial by the cumulative errors and resulting prejudicial effect of trial counsel's acts and omissions in the aforementioned constitutional issues and related arguments herein, in violation of Petitioner's Sixth Amendment right, and other cited constitutional rights, under due process of law.

On November 21, 2008, the Court granted petitioner an evidentiary hearing on his ineffective assistance of counsel claims. Carole M. Stanyar was appointed to represent petitioner at the hearing, which was conducted on June 4 and 5, 2009. Subsequent to the hearing, both parties filed supplemental briefs.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11, 120 S.Ct. 1495.

## III. Discussion

### A. Claims # 1, 5, 6, 7, 10, and 11. The assistance of counsel claims.

The Court will discuss petitioner's assistance of counsel claims together for pur-

poses of judicial clarity. In his first claim, petitioner contends that he was denied the right to retain the counsel of his choice when the trial court refused to grant him an adjournment to hire new counsel after his first retained counsel informed him the day before trial was to commence that he was unable to represent petitioner at trial. In his interrelated fifth and seventh claims, petitioner claims his trial counsel was ineffective for essentially five reasons: (1) failing to argue misidentification, (2) failing to investigate grossly erroneous medical treatment, (3) failing to raise a legally cognizable defense, (4) failing to raise other viable defenses, and (5) failing to raise defense requested by defendant. In his eleventh claim, petitioner alleges that the cumulative effect of his trial counsel's errors deprived him of a fair trial. In his sixth and tenth claims, petitioner alleges that both his original appellate counsel, as well as his replacement appellate counsel, failed to present adequate evidence in support of petitioner's ineffective assistance of trial counsel claims at the *Ginther* hearing or before the Michigan Court of Appeals.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must normally satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Second, the defendant must

show that such performance prejudiced his defense. *Id.*

■ The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Id.*

### Claim I.

**I. Petitioner was denied his Sixth Amendment right to counsel of choice and due process of the law when the trial court abused its discretion in denying Petitioner a continuance to retain counsel of choice.**

■ In his first claim, petitioner contends that he was deprived of his Sixth Amendment right to counsel when the trial court refused to grant him a continuance to retain counsel of his choice.

Trial was originally set for December 4, 2000. This trial date was adjourned on November 17, 2000, to February 12, 2001. However, the trial court subsequently moved the trial date to February 8, 2001.

On the morning of February 8, 2001, petitioner requested an adjournment, informing the court that he attempted to hire private counsel two months earlier, but that his retainer had been returned to petitioner the day before trial:

Mr. Correll [court-appointed defense counsel]: Your Honor, I spoke with Mr. Couch this morning. I understand that he does wish to ask this Court—I believe that he intends to ask this Court for an adjournment so that he can secure counsel to try this case.

Petitioner: That is correct, your Honor. I—I mailed Mitchell Ribitwer a retainer check approximately two months ago. I

have proof of that, and I have met with him several times. He has spoke with my attorney on several occasions and he notified me yesterday and returned my retainer and told me that he could not represent me because he didn't have the time to fit into my case. I have called him numerous times in the past two weeks to get a hold of him. I've had discussions with Mr. Correll regarding this matter and as of yesterday, I was notified by my attorney that he could not represent me. He returned my money and I'm asking the Court to please allow me an adjournment so I can retain another counsel of my choice. (Tr. 2/8/2001, pp. 5–6).

The trial court indicated to petitioner that the case had been before the court since July and was originally set for trial on December 4th, two months earlier. (*Id.* at pp. 6–7). The court further noted that petitioner was free on bond, had ample time to retain counsel, and that appointed counsel was prepared for trial:

> The Court: But my point is that you were aware of the trial date, you have been given a sufficient amount of time, you have been given an extraordinary amount of time, especially considering the charges and you have been out—you have been able to make bond in this case. I have appointed counsel for you. Not only have I appointed competent Counsel for both you and the Co–Defendant in this case and I[am] more than comfortable with the work that both of them put in, including Mr. Correll. In fact, I know the hours Mr. Correll has been putting in because I know the kind of time he's been putting in and the kind of pleadings I have seen coming from him. I am satisfied with his representation of you and today is the trial date. You were aware that today was the trial date and we're going to have a trial today with Mr. Correll representing you.

> Petitioner: There's no disrespect to Mr. Correll or his associate here, and the other defendant's representation, your Honor, but I would request that I please be allowed my own counsel.

> The Court: You had that ability any time before today.

> Petitioner: And I did—

> The Court: And therefore, there will be no further adjournments of this trial. [*Id.* at pp. 7–8].

The Michigan Court of Appeals rejected petitioner's claim, noting that Petitioner was released on bond, had ample time to secure counsel, waited until the day of trial to bring his motion, and offered no dispute or breakdown in the relationship with appointed counsel to justify the continued delay. *People v. Couch,* Slip. Op. at 4.

■ One element of the Sixth Amendment right to counsel is the right of a defendant who does not require appointed counsel to choose who will represent him or her. *U.S. v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (*citing Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Id.* (*citing Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624–25, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989)). Where a criminal defendant's right to be assisted by counsel of one's choice is wrongly denied, it is unnecessary for a reviewing court to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. *Id.* at 148, 126 S.Ct. 2557: "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the

quality of the representation he received." *Id.*

 "A key consideration in the right to counsel under the Sixth Amendment is a reasonable opportunity to employ and consult with counsel." *Linton v. Perini,* 656 F.2d 207, 211 (6th Cir.1981). "[E]very person has a constitutional right to retain at his own expense his own counsel so long as that right does not unreasonably interfere with the normal progress of a criminal case. Conversely, a state may not arbitrarily interfere with this right in the name of docket control." *Id.* Michigan has recognized this Constitutional request. *People v. Charles O. Williams,* 386 Mich. 565, 194 N.W.2d 337 (1972).

Petitioner was unreasonably denied his Sixth Amendment right to hire the counsel of his choice. Petitioner had mailed another attorney a retainer check approximately two months prior to the trial date and had met with him several times. On the day before trial was to begin, petitioner was contacted by counsel, who returned his retainer and told petitioner that he could not represent him because he didn't have the time to fit the case into his schedule. Petitioner had called that counsel numerous times in the two weeks leading up to the trial date, in an attempt to contact him. Petitioner asked the trial court for an adjournment so that he could retain another counsel of his choice.

In *United States v. Johnston,* 318 F.2d 288 (6th Cir.1963), the Sixth Circuit held that a criminal defendant's right to retain the counsel of his choice was violated when the trial court denied the defendant's request for an adjournment to retain new counsel, after his retained counsel informed the defendant on the Friday prior to trial that he would be unable to represent him at the trial, which was scheduled to begin the following Tuesday, but would send an associate in his place to try the case. Although sympathetic to the fact that the district court judge had to "make a decision on short notice[.]", the Sixth Circuit further concluded that "[T]he weekend, from Friday until Tuesday, was not a reasonable sufficient time to give appellant Balk fair opportunity to select and employ counsel of his own choosing." *Id.* at 291. The Sixth Circuit went on to rule that the defendant "was deprived of a fair opportunity and a reasonable time to select his own counsel." *Id.*

In the present case, petitioner only discovered the day before trial that the counsel of his choice was unable to represent him at trial and was returning his retainer fee. If a weekend is an insufficient time to obtain new counsel, attempting to hire a new attorney the night before a murder trial is a virtual impossibility.

Moreover, nothing in the record indicates that the requested continuance involved a scheme on petitioner's part to delay the trial, nor was there any showing of inconvenience to the witnesses, opposing counsel, or the court. The case involved a serious charge of second-degree murder. Under these circumstances, the state trial judge acted unreasonably and arbitrarily in denying petitioner's request for a continuance to retain new counsel. *See Linton,* 656 F.2d at 212. Although the Michigan Court of Appeals and respondent both focus on petitioner's alleged failure to voice any complaints about his defense counsel, they both ignore the fact that the trial court cut petitioner off in the middle of a sentence and never made any inquiry into the reasons why petitioner did not want to proceed with appointed counsel.

This Court concludes that petitioner's Sixth Amendment right to the counsel of choice was violated by the trial court's arbitrary refusal to grant petitioner a continuance to retain new counsel after petitioner had been informed the day before trial that his retained counsel would be

unable to represent him at trial. Because petitioner's right to retain the counsel of his choice was wrongly denied, it is unnecessary for this Court to conduct an ineffectiveness or prejudice inquiry in order for petitioner to obtain habeas relief. *Gonzalez–Lopez*, 548 U.S. at 148, 126 S.Ct. 2557. Accordingly, petitioner is entitled to the issuance of a writ of habeas corpus on his first claim. *Linton*, 656 F.2d at 212.

### Claims V & VII.

**V. Petitioner Couch was denied his Sixth Amendment right to the effective assistance of counsel that resulted in the denial of his right to receive adequate representation and a fair trial.**

**VII. Petitioner received ineffective assistance of counsel where his attorney failed to investigate and pursue Petitioner's causation defense issue, failed to adequately defend against the charges, failed to familiarize himself with discovery and lower court file, failed to consult with and provide exculpatory and related material to appointed expert, failed to cross examine state expert with, inter alia, the exculpatory AMR/EMS medical report, to expose false and/or perjurious testimony in the state's case, failed to call three supporting eyewitnesses, in continuity with counsel's testified to trial strategy and Petitioner's claim of actual innocence, in violation of the Sixth Amendment.**

In his fifth and seventh claims, petitioner makes several allegations of ineffective assistance of trial counsel on the part of his court-appointed attorney.

■ The most serious ineffective assistance of trial counsel claim involves petitioner's related claims that trial counsel failed to investigate and to rebut the medical examiner's findings as to the cause of death, contending that there was evidence that would establish that the decedent's death was not the result of the beating, but was instead an accidental death caused by a combination of the decedent's ingestion of alcohol and cocaine and his subsequent restraint by emergency medical personnel when they were attempting to render aid to him.

The Oakland County Medical Examiner, Dr. Ljuvisa Dragovic, performed an autopsy on the decedent. Dr. Dragovic concluded that the decedent had died from aspirating on, or "drowning" in, his own blood as a result of being beaten. Dr. Dragovic classified the victim's death as a homicide.

Petitioner contends that reports by the Independence Township Fire Department (I.T.F.D.) and American Medical Response (A.M.R.), the first and second responders in this case, as well as several eyewitness accounts, would call Dr. Dragovic's findings into question and establish that the decedent's death was not a homicide, but rather, an accidental death caused by the decedent's ingestion of alcohol and cocaine combined with his being restrained by emergency medical personnel at the scene.

At the evidentiary hearing in this Court, petitioner's counsel presented several witnesses who called Dr. Dragovic's findings into question. A statement from Marie Ann Burton was admitted at the hearing. Ms. Burton indicated that the decedent was still speaking and coherent when the police and firefighters arrived.

Firefighter Phillip Williams testified that when he arrived with the Independence Township Fire Department, the decedent was in the face down position, he was conscious, he was speaking, and he became combative when emergency medical personnel tried to render care and administer oxygen. Williams testified that it took five people to restrain the victim's arms, legs and upper body on the backboard. By the time the A.M.R. crew arrived minutes later, the decedent appeared

to be unconscious, but he responded to pain. At least three different emergency medical technicians or paramedics testified that the decedent was breathing normally and his airways were clear at all times. There was testimony that paramedics were actively listening for his breath sounds from the decedent while he was being placed on the gurney, as he was transported to the ambulance, and as he was in the ambulance, up to the moment of his death. Paramedics listened to the decedent's breathing sounds as they administered oxygen at first with a "blow by" high-oxygen machine placed beside his face, later with a bag valve mask placed directly on his face. Emergency medical personnel recorded the decedent's air passages as clear, with respirations normal and even.

The decedent was subsequently intubated. The various emergency medical personnel testified that attempts at suctioning revealed there was no blood in the decedent's airways leading to his lungs. One paramedic, Eric John Moffet, adamantly stated: "I sucked into his throat. I looked into the throat. I had to put the tube into his throat. There was no blood, no secretions." (Tr. 6/5/2009, pp. 185, 187–188).

The petitioner's expert forensic pathologist, Dr. John Butt, testified that the information supplied by the first and second responders was consistent with his own microscopic evaluation of tissue from the decedent's lungs, namely, that the deceased did not die from "drowning" in his own aspirated blood. Dr. Butt testified that much of Dr. Dragovic's own descriptions of his observations at the time of the decedent's autopsy were inconsistent with an aspirated drowning death. For example, according to Dr. Dragovic's autopsy report, the decedent's upper airways did not show signs of aspirated blood because the mucosa of the trachea was "without note". According to Dr. Butt, the lung tissue taken at autopsy showed that he did

not find a significant amount of "free blood" "breathed in" from the outside deep in the lower airway of the decedent's lungs, namely, in the small bronchioles and alveoli. Dr. Butt explained the appearance of normal lung tissue, lung tissue with pulmonary edema, and lung tissue flooded in aspirated blood. Normal lung tissue has a creamy pink-salmon colored appearance. Lung tissue with pulmonary edema shows as a more uniform plum, or purplish-red, in color. Aspirated blood will present as blotchy or patchy areas of blood visible in contrast to the "normal" creamy pink background tissue. Dr. Butt pointed out that Dr. Dragovic did not offer a description of patchy, blotchy aspirated blood in his written findings from the decedent's autopsy. According to Dr. Butt, the bronchioles and alveoli in the lung tissue showed that the decedent clearly had a pulmonary edema, which has been associated by researchers with fatal levels of cocaine, such as the amounts found by toxicologists in the decedent.

In answer to the Court's question, Dr. Butt explained that if the decedent had drowned in aspirated blood, if it "flooded" the air sacs as claimed by Dragovic in his trial testimony, this blood would "block out" the "honeycomb" structure with blood. However Dr. Butt pointed out that there were vast spaces of air visible in the decedent's lung tissue.

Dr. Butt testified that the information provided by the medically-trained first and second responders should have been considered by Dr. Dragovic in determining the cause of death. Dr. Butt further opined that the EMS information in this case ruled out an aspirated blood, drowning death.

Dr. Butt testified that the decedent's death fit the pattern of a typical, sudden cocaine death occurring during a struggle while the person is subjected to police

restraint. Although Dr. Butt testified that the precise "mechanism" of death in these types of cases has been the subject of evolving debate, he indicated that there a "consensus" within the profession that these cases do occur with some frequency and that they fit a familiar pattern. Dr. Butt described this pattern as the deceased's recent use of an excitatory drug, struggling in the face of restraint by police, a rapid onset of unconsciousness and death, with evidence of pulmonary edema. Dr. Butt testified that these deaths are deemed accidental. Dr. Butt concluded that the foregoing was the cause of the decedent's death, and that the manner of death was "accidental." This was a restraint-related death due to cocaine toxicity.

Dr. Dragovic agreed with Dr. Butt as to many significant facts, for example, that brain injury was not the cause of death, that the nose and facial injuries would not have caused death "without the complication of" the aspiration of blood and that if the trachea were coated in aspirated blood, he would have noted that in the autopsy. Dr. Dragovic agreed that the notes from the autopsy specified the "mucosa is without note". Dr. Dragovic also agreed that the decedent's lung tissue showed engorged or congested blood vessels and pulmonary edema, neither of which are aspirated blood. Dr. Dragovic continued to insist, however, that the deceased had significant areas of aspirated blood visible microscopically in deep lung tissue (i.e., the bronchioles and the alveoli). Pressed at the evidentiary hearing to quantify the percentage of such tissue, Dr. Dragovic responded "25 to 30 percent". Dr. Dragovic indicated that he did not review the reports from the I.T.F.D. or A.M.R. prior to reaching a conclusion as to the complainant's cause of death.

Both the prosecutor's own expert emergency room witness, Dr. Aranosian, as well as Dr. Butt, testified that a small amount of aspirated blood will not result in death. (Tr. 2/12/09, p 39; Hearing Tr., 6/4/09, p 42).

Petitioner testified at the evidentiary hearing that he had discussed the possibility of improper medical treatment or restraint asphyxia with his counsel prior to trial.

Petitioner's trial counsel also testified at the evidentiary hearing. He agreed that in light of the prosecutor's trial theory, namely, that the victim died from drowning in his own aspirated blood, if he had the testimony from the paramedics and emergency medical technicians who testified at this hearing, he would have used that evidence. He also agreed that defense expert, Werner Spitz, was never given the first or second responders' reports. Most significantly, because counsel felt his co-counsel was a good attorney, he never even talked to Dr. Spitz.

Trial counsel testified that he knew that EMS workers had been called to the scene because references to those witnesses were in the original police reports given to counsel. He believed that he "may have" talked to EMS before the preliminary examination. However, any discussion he had with EMS outside the courtroom did not garner the evidence that the victim had an open airway at all times, evidence that he admits he now would have used if he had it.

In the present case, trial counsel was ineffective for failing to adequately investigate the medical examiner's conclusions as to the cause of death or to challenge these conclusions at trial. Although Dr. Werner Spitz was appointed by the court as a defense expert, reviewed Dr. Dragovic's autopsy findings, and concurred in their result, it is obvious that Dr. Spitz was doing so without having information which might have called Dr. Dragovic's findings

into question. Trial counsel acknowledged that he never sent the reports from I.T.F.D. and A.M.R., the first and second responders, to Dr. Spitz for his review. These reports may have called into question Dr. Dragovic's finding that the victim died from aspirating and choking on his own blood, as the reports established that the victim was conscious, breathing, and speaking at the time when emergency personnel first arrived at the scene.

■ A defense attorney should work "closely with anyone retained as a defense expert to insure that the expert was fully aware of all facts that might be helpful to the defendant." *Glenn v. Tate,* 71 F.3d 1204, 1210, n. 5 (6th Cir.1995). In this case, the failure of petitioner's trial counsel to obtain proper review of Dr. Dragovic's autopsy report and all associated evidence by Dr. Spitz was ineffective, in light of the fact that testimony from the evidentiary hearing indicated that there was an expert witness who would have testified favorably for petitioner, but counsel failed to conduct a diligent search for that expert.

Compounding this error was the fact that counsel, by his own admission, never actually spoke with Dr. Spitz. The failure of a defense attorney to screen, supervise, or engage his expert can amount to the ineffective assistance of counsel. *See Richey v. Mitchell,* 395 F.3d 660, 685 (6th Cir.2005); *vacated on other grds. sub nom. Bradshaw v. Richey,* 546 U.S. 74, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005).

■ By failing to provide the I.T.F.D. and A.M.R. reports to Dr. Spitz, as well as failing to meet with Dr. Spitz and discuss the case with him, defense counsel precluded Dr. Spitz from conducting a complete review of Dr. Dragovic's findings as to the cause of death. He thereby prevented Dr. Spitz from either testifying as a defense expert at trial, or at least advising petitioner's counsel about the problems with Dr. Dragovic's conclusions, so that

defense counsel could then attempt to find an expert, such as Dr. Butt, who would have been willing to testify for the defense. The failure by counsel to obtain an expert pathologist to rebut a medical examiner's finding as to the cause of death in a homicide case can amount to the ineffective assistance of counsel, where there is evidence that calls the medical examiner's findings as to the cause of death into doubt. *See Conwell v. Woodford,* 312 Fed. Appx. 58, 59 (9th Cir.2009); *Weddell v. Weber,* 290 F.Supp.2d 1011, 1021–24 (D.S.D.2003).

In light of the testimony presented at the evidentiary hearing, this Court concludes that counsel was ineffective for failing to investigate and to rebut the medical examiner's findings as to the cause of death.

As this Court indicated at the conclusion of the evidentiary hearing, the most troublesome part of this case was that neither the medical examiner nor Dr. Spitz had ever looked at the first or second responders' reports in this matter before reaching a conclusion as to the cause of death. (Tr. 6/5/2009, p. 297). Had defense counsel engaged in a proper investigation and preparation of this issue, it is reasonably likely that the outcome of this case would have been different. "[K]nowing when to stop is sometimes difficult, but deciding not to start presenting a defense is indefensible." *Matthews v. Abramajtys,* 92 F.Supp.2d 615, 638 (E.D.Mich.2000). Accordingly, petitioner is entitled to habeas relief on this claim as well.

**Remaining Claims of Ineffective Assistance of counsel.**

Because the Court is granting petitioner a writ of habeas corpus on his first claim and a portion of his fifth and seventh claims, the Court will only briefly address petitioner's remaining claims. *See Brown v. Palmer,* 358 F.Supp.2d 648, 656 (E.D.Mich.2005).

■ As part of his ineffective assistance of trial counsel claims, petitioner contends that trial counsel was ineffective for failing to argue that a third assailant, probably Jason Beardsley, was the person that was seen assaulting the complainant outside of the apartment. Petitioner points to discrepancies between his physical appearance and the description of the assailant given by several eyewitnesses to the assault. Petitioner ignores the fact that counsel did bring out a number of discrepancies between the witnesses' description of the assailant and petitioner's actual appearance in his closing argument. (Tr. 2/13/2001, pp. 69–74). Therefore, counsel did challenge the identification of petitioner as the person seen assaulting the decedent outside.

Moreover, accusing Jason Beardsley of being the actual perpetrator in this case may have been counterproductive, in light of the fact that Beardsley testified positively for petitioner at trial, stating that he never saw petitioner hit, kick, or strike the decedent.(Tr. 2/12/2001, pp. 252). Beardsley also denied assaulting the decedent. (*Id.* At p. 257). Petitioner has failed to show that counsel was ineffective for failing to argue that Beardsley was the man who assisted the co-defendant with the assault outside of the apartment.

■ Petitioner also claims that counsel was ineffective for failing to present an abandonment defense. Abandonment of a criminal enterprise before the elements of the charged crime are committed is recognized as a defense under Michigan law. *See Hill v. Hofbauer,* 195 F.Supp.2d 871, 886 (E.D.Mich.2001) (*citing People v. Kimball,* 109 Mich.App. 273, 283–88, 311 N.W.2d 343 (1981)).

Although counsel did not explicitly argue that petitioner abandoned the criminal enterprise, he argued that petitioner left the scene before the decedent was seriously injured, and was therefore not responsible for his death. Because counsel presented a defense that minimized petitioner's involvement in the beating, he has failed to establish that counsel was ineffective for failing to present a viable defense at trial.

In his sixth and tenth claims, petitioner alleges the ineffective assistance of appellate counsel. In light of the fact that this Court is granting petitioner habeas relief on two of his assistance of trial counsel claims, petitioner's ineffective assistance of appellate counsel claims are now moot. *See e.g. Cannon v. Mullin,* 383 F.3d 1152, 1178 (10th Cir.2004).

**B. Claim # 2. The exculpatory evidence claim.**

**II. State officials/authorities withheld and failed to disclose exculpatory Brady material in violation of the Fourteenth Amendment due process clause of the U.S. Constitution.**

■ In his second claim, petitioner contends that the prosecution deliberately withheld the Independence Township Fire Department report, which would have provided exculpatory evidence regarding the cause of death.

■ Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Petitioner indicates that he was aware of the Independence Township Fire Department report prior to trial. In fact, petitioner indicates that from the time of his arrest, he asked trial counsel to investigate this report.[2]

**2.** See Petition for Writ of Habeas Corpus, p. 129.

■ There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir.2000). The *Brady* rule does not assist a defendant who is aware of essential facts that would allow him or her to take advantage of the exculpatory evidence at issue. *Coleman v. Mitchell*, 268 F.3d 417, 438 (6th Cir.2001). Because petitioner was aware of the existence of this report, petitioner is not entitled to habeas relief on his second claim.

## C. Claim # 3. The claim involving the admission of the complainant's photographs

**III. Petitioner Couch was denied a fair trial and due process when the trial court abused its discretion in allowing photographs of decedent to be published to the jury where witnesses used were inadequate for a proper foundation with respect to Petitioner Couch.**

■ Petitioner next contends that the trial court improperly admitted a "bloody" photograph of the victim.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Petitioner's claim that the trial court admitted a bloody photograph of the complainant fails to state a claim upon which habeas relief can be granted. *See e.g. Cooey v. Coyle*, 289 F.3d 882, 893–94 (6th Cir.2002).

## D. Claims # 4 and # 9. The sufficiency of evidence claims.

**IV. Under conviction for second-degree murder, either as principal or under an aiding and abetting theory, there is an insufficiency of evidence as to causation where there exists no reasonable and direct causal connection between Petitioner's conduct and decedent's death, and there exists intervening-cause-of-death defenses, in violation of due process.**

**IX. There is a constitutionally, evidentiary, and legal insufficiency of evidence to establish causation beyond a reasonable doubt based on false and/or perjurious expert testimony that is incompetent and unreliable, failed to comport with underlying facts of case, and failed to meet qualifications or reliability or MRE/FRE as required under due process of the U.S. Constitution.**

■ In his fourth and ninth claims, petitioner contends that there was insufficient evidence to convict him of second-degree murder.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir.2000) (*citing to Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Johnson v. Hofbauer*, 159 F.Supp.2d 582, 596 (E.D.Mich.2001). Moreover, the *Jackson* standard must be applied "with explicit reference to the sub-

stantive elements of the criminal offense as defined by state law." *Adams v. Smith,* 280 F.Supp.2d 704, 714 (E.D.Mich.2003) (*quoting Jackson,* 443 U.S. at 324, n. 16, 99 S.Ct. 2781).

Under Michigan law, the elements of second degree murder are (1) a death; (2) caused by an act of the defendant; (3) with malice, and (4) without justification or excuse. *Hill v. Hofbauer,* 195 F.Supp.2d at 885 (*citing People v. Goecke,* 457 Mich. 442, 463–64, 579 N.W.2d 868 (1998)).

■ Under Michigan law, to support a finding that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;

2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Brown v. Palmer,* 441 F.3d 347, 351 (6th Cir.2006) (*citing People v. Carines,* 460 Mich. 750, 757–58, 597 N.W.2d 130 (1999)).

There was sufficient evidence for a rational trier of fact to conclude that petitioner committed the crime of second-degree murder, either as the principal, or as an aider and abettor. Shannon Smith testified that she witnessed the co-defendant pull the decedent out of the apartment with petitioner's help. While the two men were dragging the decedent outside, the co-defendant was repeatedly hitting or punching the decedent hard to his face, chest, and upper part of the body. (Tr. 2/9/2001, pp. 85–86). Jeffery Carr testified that he witnessed petitioner pull the decedent off of Susan Cook and start hitting and kicking the decedent "repeatedly". Carr testified that petitioner and another man started hitting the decedent. Carr testified further that petitioner punched the decedent in the face about 25 times. While this was happening, the co-defendant was kicking and hitting the decedent in the face. Once the decedent had been taken outside, Carr witnessed the decedent get struck a few more times by petitioner and the co-defendant. (Tr. 2/12/2001, pp. 266–80). Such testimony, if believed, would be sufficient to establish that petitioner guilty of second-degree murder, either as a principal or as an aider and abettor.

Petitioner also contends that there was insufficient evidence to establish the cause of death in this case. Dr. Dragovic testified that the decedent's death was a homicide caused by the complainant aspirating and choking on his own blood as a result of the beating. Such evidence, if believed, would be sufficient to establish the cause of decedent's death so as to defeat petitioner's sufficiency of evidence claim. *See Harding v. Bock,* 107 Fed.Appx. 471, 477 (6th Cir.2004).

To the extent that petitioner challenges the credibility of the lay or expert witnesses, petitioner would not be entitled to habeas relief. A reviewing court does not re-weigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Johnson v. Hofbauer,* 159 F.Supp.2d at 597. Petitioner is not entitled to habeas relief on his fourth and ninth claims.

## E. Claim # 8. The perjury claim.

**VIII. Petitioner's conviction was obtained by the knowing use of false and/or perjurious testimony in violation of federal law under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution when state officials/agents uti-**

lized, allowed, and failed to correct known false and/or perjurious testimony of state expert Dr. Dragovic and trial counsel Correll, at Petitioner's trial and evidentiary hearing, in deliberate, misleading, deceptive, and contriving practices, in reckless disregard for the truth.

■ Petitioner lastly contends that Dr. Dragovic committed perjury at trial concerning the cause of death.

■ The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)(internal citations omitted).

■ To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins,* 209 F.3d 486, 517–18 (6th Cir.2000). A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F.Supp.2d 664, 684 (E.D.Mich.2003). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Monroe v. Smith,* 197 F.Supp.2d 753, 762 (E.D.Mich.2001).

■ The only evidence that petitioner offers in support of his perjury claim is the fact that another pathologist, Dr. Butt, reached a different conclusion as to the cause of death. The testimony of an expert is not perjury merely because it differed from opinions of other experts. *See Campbell v. Gregory,* 867 F.2d 1146, 1148 (8th Cir.1989). Petitioner is not entitled to habeas relief on his eighth claim.

## IV. *ORDER*

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.